# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

    v.

ELIAS JUAREZ-SANCHEZ,

       Defendant.

No. 1:15-cr-00396-AA

**OPINION & ORDER**

AIKEN, District Judge.

On November 5, 2015, a federal grand jury indicted Defendant Elias Juarez-Sanchez for illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). ECF Nos. 1, 2. The indictment alleges that Defendant illegally reentered the United States following his previous deportations on June 4, 2011, and July 1, 2015.

This matter comes before me on Defendant's Motion to Dismiss. ECF No. 27. An evidentiary hearing was held on November 29, 2016. ECF No. 54. Defendant asserts that the underlying removal proceedings violated his due process rights, rendering both his original removal and his subsequent conviction for illegal reentry invalid. For the reasons set forth below, Defendant's Motion is DENIED.

## BACKGROUND

Defendant was born on September 15, 1989, in Puebla, Mexico. Defendant testified that he left his home village when he was sixteen years old and moved to Mexico City with his brothers. Defendant and his brothers lived in Mexico City for some time before entering the

United States.  Like many undocumented immigrants, Defendant and his brothers found agricultural work, first in California and then in Oregon.  In 2009, Defendant began a relationship with his now-wife, Ashley LaRance-Bailey, a U.S. citizen.  Defendant and Mrs. LaRance-Bailey have three children together, born in 2011, 2014, and 2015.

On March 27, 2011, Defendant was arrested in Jackson County, Oregon and charged with Possession of Cocaine.  He pleaded guilty to the charges on May 9, 2011, and was transferred into the custody of Immigration and Customs Enforcement ("ICE").  As Defendant does not speak English, the state court proceedings were translated into Spanish by an interpreter. Defendant was taken to the immigration detention center in Tacoma, Washington, where he appeared before an Immigration Judge ("IJ") on May 31, 2011.  At that hearing, Defendant was asked what language he wished to proceed in and he requested that the proceedings be translated into Spanish.  Defendant was found to be unlawfully in the United States, his request for voluntary departure was denied, and the IJ ordered that Defendant be deported.  Defendant was deported on June 4, 2011.

At some point after his removal, Defendant reentered the United States and returned to Oregon.  He was arrested on domestic violence charges in Jackson County in May 2015 and pleaded guilty.  Defendant's 2015 state court criminal proceedings were also conducted in Spanish.

Following his second conviction on state charges, a federal grand jury indicted Defendant for a single count of illegal reentry in *United States v. Juarez-Sanchez*, Case No. 1:15-cr-00213-AA.  On June 16, 2015, Defendant appeared before me and entered a plea of guilty to the charge of illegal reentry.  At that proceeding, Defendant was represented by counsel and had the assistance of a Spanish interpreter.  I accepted Defendant's plea and sentenced him to time

served and three years of supervised release. Defendant's 2011 removal order was reinstated and Defendant was deported for a second time on July 1, 2015.

Defendant promptly returned to the United States and was found in Jackson County, Oregon on October 28, 2015. He was taken into federal custody and this indictment followed.

As previously noted, Defendant was provided with a Spanish interpreter at his state court criminal proceedings, his 2011 removal hearing, and his 2015 federal illegal reentry proceeding. Defendant now claims that his native language is Nahuatl and that he did not speak or understand Spanish well enough to comprehend any of his prior court proceedings.[1]

## LEGAL STANDARD

An alien who "has been denied admission, excluded, deported, or removed" commits the crime of illegal reentry if he or she "enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). "A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has a due process right to bring a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction." *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012) (per curiam). However, an alien defendant prosecuted for illegal reentry may not collaterally attack the validity of the underlying deportation unless the alien demonstrates that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

---

[1] Nahautl is the most widely-spoken of over sixty indigenous languages spoken in Mexico. At the evidentiary hearing, the Court heard the expert testimony of Dr. Lynn Stephen, Ph.D., a professor of anthropology at the University of Oregon. Dr. Stephen is a cultural anthropologist with special expertise in the indigenous cultures of Mexico and Central America. Dr. Stephen's testimony and report provided valuable insight into the history and cultural context of monolingual indigenous groups, both in Mexico and in immigrant communities within the United States.

I.      **Administrative Exhaustion and Deprivation of Judicial Review**

An alien is barred from collaterally attacking his underlying deportation as a defense to §

1326 charges if he validly waived the right to appeal that order during the deportation

proceedings. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). However,

the exhaustion requirement of § 1326(d) cannot bar collateral review of a deportation proceeding

"'when the waiver of right to an administrative appeal did not comport with due process.'"  *Id.*

(quoting *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001)).  "A waiver of the

right to appeal a removal order does not comport with due process when it is not 'considered and

intelligent.'"  *Id.*

A defendant is deprived of the opportunity for meaningful judicial review if he is not

properly informed of his right to appeal a removal order. *Id.* at 1050.

II.     **Fundamental Unfairness**

"An underlying removal order is 'fundamentally unfair' if '(1) [a defendant's] due

process rights were violated by defects in his underlying deportation proceeding and (2) he

suffered prejudice as a result of the defects." *Ubaldo-Figueroa*, 364 F.3d at 1048 (quoting

*United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998)).   To show prejudice in a

removal proceeding, a defendant must show only that he had a "plausible" ground for relief from

deportation. *Id.* at 1050.

### DISCUSSION

Defendant moves to dismiss the indictment on the basis that his 2011 removal hearing

violated his due process rights.  Specifically, Defendant asserts that (1) the 2011 removal hearing

and the 2015 federal criminal proceedings were conducted in Spanish, a language Defendant

claims not to understand; (2) the IJ failed to properly advise Defendant of his right to appeal the

2011 removal decision; and (3) the IJ improperly relied on Defendant's judgment of conviction from Jackson County Circuit Court, which Defendant contends was inadmissible.

## I.    Language

The issue of language is central to this case.  As previously noted, Defendant asserts that his native language is Nahautl.  In support of his claim that he does not speak or understand Spanish, Defendant has submitted the results of a language listening proficiency test administered on May 25, 2016.  Defendant tested at a "Novice Low" level of Spanish proficiency, the lowest possible level.[2]  Def. Mot. Ex. 2, at 1.  "Novice Low" speakers "are able occasionally to recognize isolated words or very high frequency phrases when those are strongly supported by context."  Def. Mot. Ex. 2, at 8.  They "show virtually no comprehension of any kind of spoken message, not even within the most basic personal and social contexts."  Def. Mot. Ex. 2, at 8.  Defendant also offered his own testimony and that of his wife, both of whom maintain that Defendant's ability to speak Spanish is extremely limited.

"[A] competent translation is fundamental to a full and fair hearing.  If an alien does not speak English, deportation proceedings must be translated into a language the alien understands." *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003) (internal quotation marks and citation omitted). "Due process requires that an applicant be given competent translation services." *Id.*  If, as Defendant claims, he could not understand the language of his 2011 removal proceeding, then he could not have given a considered and intelligent waiver of his appeal rights and the proceeding would have been fundamentally unfair.

---

[2] Based on the testimony and argument presented at the hearing, Defendant does not appear to maintain that his ability to speak and understand Spanish is actually at the "Novice-Low" level.  The Court heard the expert testimony of Dr. Sandra Gonzalez, Psy.D., a licensed clinical psychologist.  Dr. Gonzalez testified that she has provisionally diagnosed Defendant with a learning disorder, which likely impeded his ability to perform at school and might explain Defendant's extremely low score on the language test.  Dr. Gonzalez's testimony and report indicate that she does not believe that Defendant is mentally disabled.  Def. Hr'g Mem. Ex. G, at 9.

The Ninth Circuit has recognized three types of evidence which can demonstrate incompetent translations: (1) direct evidence of incorrectly translated words, (2) unresponsive answers by the witness, and (3) the witnesses' expression of difficulty understanding what is said to him. *Perez-Lastor v. INS*, 208 F.3d 773, 778 (9th Cir. 2000). In this case, there is no suggestion that any of the Spanish terms, questions, or answers were incorrectly translated, so we may proceed to the second and third types of evidence.

I have listened to the recordings and reviewed the transcripts of Defendant's prior legal proceedings, which Defendant has helpfully provided with side-by-side English and Spanish translations. In the hearings related to Defendant's state court conviction for Possession of Cocaine, Defendant answers all questions posed to him. Although his answers to the questions are brief, they are properly responsive and Defendant never expresses any difficulty with understanding his interpreter or any of the questions. Def. Hr'g Mem. Ex. A. At his 2011 removal hearing, Defendant was asked, in Spanish and English, what language he wished to proceed in and he answered that he wished to proceed in Spanish. Def. Hr'g Mem. Ex. B, at 2. Defendant was questioned by the IJ and his answers, while once again brief, were responsive to the questions asked and Defendant never expressed any difficulty in understanding either his interpreter or the questions. Def. Hr'g Mem. Ex. B, at 15-22. After Defendant returned to the United States, he was charged with a misdemeanor crime of domestic violence in Jackson County Circuit Court. In those proceedings, Defendant's answers to all questions were, once again, brief but appropriately responsive. Defendant did not express any difficulty in understanding his interpreter or the questions and, at one point, even asked his interpreter, in Spanish, if he was signing a document in the correct place. Def. Hr'g Mem. Ex. C, at 6.

On June 16, 2015, Defendant appeared before me to enter a plea of guilty to a charge of illegal reentry and accept his sentence.  Gov. Resp. Ex. 5.  As in his other proceedings, Defendant was assisted by a Spanish interpreter.  Defendant did not express any difficulty in understanding his interpreter or the questions I asked him.  My practice when dealing with parties who require the services of an interpreter is to question them at length to ensure that they are able to understand both their interpreter and the nature of the proceeding.  I followed that practice when taking Defendant's plea in June 2015 by engaging in a colloquy with Defendant in which I asked him about his background, the services of the interpreter, his understanding of the plea agreement, the consequences of pleading guilty, and the factual basis for his plea.  After satisfying myself of his understanding, I accepted Defendant's guilty plea.  Defendant's answers throughout the colloquy were appropriately responsive to my questions.  When told that he needed to answer with an audible "yes" or "no" instead of "uh-huh," Defendant complied.  Gov't Resp. Ex. 5, at 4-5.

The following exchange, which took place just before sentencing, is of particular significance, because it demonstrates that Defendant understood both the questions, which were put to him in Spanish, and the import of the proceeding:

> THE COURT: Sir, I'm happy to hear anything you wish to tell me.
> THE DEFENDANT: About what?
> THE COURT: Anything you think I should know before I impose sentence in this case.  It's your opportunity to talk to me.
> THE DEFENDANT: No, I don't have anything to say.
> THE COURT: How old are the six children?
> THE DEFENDANT: The eldest is 11, ten, six, three, a year and a half, and four months.
> THE COURT: It's a big decision.  You have no choice.  But you will be deported to Mexico.  It's a big decision for the mother of the children to make a move to come down to Mexico.  That choice is difficult because the children have some opportunity here that they won't have in Mexico.  That's a tough call.  And it's very difficult to think about the separation.  But I need to tell you that if you come

back without the legal paperwork to be here, it's highly likely that you will be picked up again and have a longer sentence. Do you understand?
THE DEFENDANT: Yes, they told me already. I do understand.
THE COURT: You may qualify at some point to be able to come back here. And it would be worth the effort to do it right and come, and you would be welcome here. So don't give up. But please, if your family doesn't follow you for whatever reason, and you get a call to come up and help them, it's not going to helpful for you to come and get caught and go back to prison. I'm telling you all this because you are young and it's hard to watch people try to make the right decision for the family, and they put themselves in a bigger, difficult situation.
THE DEFENDANT: Yes, I understand.

Gov't Resp. Ex. 5, at 21-22.

I was satisfied that Defendant understood his Spanish interpreter when I accepted his plea in June 2015 and nothing in this case has convinced me to accept a contrary conclusion now. The weight of the evidence in this case indicates that Defendant's command of the Spanish language was sufficient for him to understand the proceedings for his 2015 conviction for illegal reentry, as shown by my colloquy with Defendant, and the 2011 removal hearing, as evidenced by Defendant's affirmative request that the hearing be translated into Spanish and his responsive answers to the IJ's questions. To the extent that Defendant and his wife have testified to the contrary, I do not find their testimony credible.[3] Accordingly, I decline to dismiss this case on the basis that Defendant received inadequate translation services at his 2011 removal hearing or his 2015 conviction for illegal reentry.

## II.    Other Issues

Defendant also asserts that his 2011 removal proceedings suffered from other irregularities. First, Defendant asserts that the IJ did not adequately explain Defendant's procedural rights, in particular his right to appeal. Second, Defendant contends that the IJ

---

[3] Defendant's credibility is further undermined by his testimony that he did not know anything about his state court conviction for Possession of Cocaine and that he believed that case to be about his being in the country illegally. As previously discussed, Defendant entered a guilty plea to the charge of Possession of Cocaine, admitted the fact of his conviction to the IJ in 2011, and discussed both the fact of his conviction and its underlying circumstances in his interview with Dr. Gonzalez. Def. Hr'g Mem. Ex. G, at 3. I do not find Defendant's claimed ignorance of the prior conviction for Possession of Cocaine credible and that claim renders much of his other testimony suspect.

improperly relied on an unsigned and uncertified copy of Defendant's state court conviction in making the decision to deport Defendant.  Defendant contends that he was prejudiced by these errors, in that they may have prevented him from taking advantage of a voluntary removal.

### A. Appeal Rights

"An alien cannot make a valid waiver of his right to appeal a removal order if an IJ does not expressly and personally inform the alien that he has the right to appeal." *Ubaldo-Figueroa*, 364 F.3d at 1049.  It is mandatory that the IJ inform the alien of his right to appeal. *Id.* at 1048.

During Defendant's 2011 removal hearing, the IJ advised Defendant and the other alien detainees that she would be making a determination in each of their cases and that they would "have the right to appeal that decision to a higher court, if you disagree with it." Def. Hr'g Mem. Ex. B, at 8.  The IJ directed the group to a written explanation of their appeal rights, ensured that each alien had received a copy of that explanation, and told them that if they did not wish to fight their cases any further, they could tell her that they did not wish to appeal.  Def. Hr'g Mem. Ex. B, at 8.  When Defendant's case was called, the IJ asked him if he understood the rights she had explained and Defendant replied that he did.  Def. Hr'g Mem. Ex. B, at 16.  After finding that Defendant was subject to removal and denying his request for voluntary departure, the IJ asked Defendant if he "want[ed] to appeal this decision to a higher court?" and Defendant answered "No."  Def. Hr'g Mem. Ex. B, 21-22.  The IJ found that Defendant had knowingly waived his appeal rights.  Def. Hr'g Mem. Ex. B, at 22.

Defendant now contends that the IJ's advice of rights was insufficient because it only advised him that he had a "right to appeal to a higher court," and that Defendant could not have provided a knowing and intelligent waiver based on that explanation.   In support of this

argument, Defendant relies principally on two cases: *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004), and *United States v. Zarate-Martinez*, 133 F.3d 1194 (9th Cir. 1998).

In *Ubaldo-Figueroa*, the defendant's waiver was found to be invalid because the colloquy between the IJ and counsel concerning the defendant's right to appeal was not translated into Spanish and was not, therefore, comprehensible to the defendant. *Ubaldo-Figueroa*, 364 F.3d at 1046-50.

In *Zarate-Martinez*, by contrast, the defendant's appeal rights were appropriately translated, but insufficiently explained. In that case, the IJ engaged in a group colloquy in which he advised the detainees that "you *will have* the right to appeal," and asked if they understood, to which the group answered yes. *Zarate-Martinez*, 133 F.3d at 1197 (emphasis in original). The Ninth Circuit found this waiver to be insufficient because "it only informed the detainees of the right to appeal and suggested to them that the opportunity to appeal would be presented at some future time." *Id.* The IJ then said that any detainee who wished to appeal should raise their hand. This "silent waiver" was deemed to be inappropriate because it might stigmatize anyone wishing to appeal and convey the impression that appeal was disfavored. *Id.* at 1198.

The facts of the present case are easily distinguishable from both *Ubaldo-Figueroa* and *Zarate-Martinez*. In this case, the IJ's explanations of Defendant's appeal rights and the waiver of those rights were appropriately translated into Spanish. Although, as discussed above, Defendant claims that he does not speak Spanish, the record clearly shows that Spanish is the language he affirmative requested at the removal hearing. Unlike the vague and conditional language used in *Zarate-Martinez*, the IJ in this case explained in clear language that the detainees had the right to appeal her decision to a higher court. When the IJ questioned Defendant individually, she asked him, once again using clear and unconditional language, if he

wished to appeal her decision to a higher court and he responded that he did not. The present case is more closely analogous to *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008). There, as here, "[t]he IJ did not phrase his statements about appeal in the future tense; it was clear that the time to appeal was at the hearing," and the IJ "also asked each individual whether he would appeal or accept the decision as final." *Becerril-Lopez*, 541 F.3d at 887. The Ninth Circuit found the IJ's inquiry in *Becerril-Lopez* to be sufficient. *Id.*

Accordingly, I conclude that the IJ appropriately advised Defendant of his right to appeal her decision and that Defendant knowingly and intelligently waived that right. As Defendant's due process rights were not violated, it is not necessary for me to examine whether Defendant suffered any prejudice. *See Padilla-Martinez v. Holder*, 770 F.3d 825, 833 (9th Cir. 2014) (when there has been no deprivation of due process, the court need not reach the issue of prejudice).

### B. State Court Judgment of Conviction

"The government has long been required to provide some authentication of records of conviction introduced in immigration proceedings." *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1196 (9th Cir. 2006). The standards relating to evidence used in a removal proceeding to prove a criminal conviction are contained in 8 U.S.C. § 1229a(c)(3) and its corresponding regulation, 8 C.F.R. § 1003.41. For proof of conviction, the statute provides:

> In any proceeding under this chapter, any of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:
> (i)    An official record of judgment and conviction.
> (ii)    An official record of plea, verdict, and sentence.
> (iii)    A docket entry from court records that indicates the existence of the conviction.
> (iv)    Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

> (v) An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.
>
> (vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.
>
> (vii) Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

8 U.S.C. § 1229a(c)(3)(B).

With regard to electronic records, the statute provides:

> In any proceeding under this chapter, any record of conviction or abstract that has been submitted by electronic means to the Service from a State or court shall be admissible as evidence to prove a criminal conviction if it is—
>
> (i) Certified by a State official associated with the State's repository of criminal justice records as an official record from its repository or by a court official from the court in which the conviction was entered as an official record from its repository; and
>
> (ii) Certified in writing by a Service official as having been received electronically from the State's record repository or the court's record repository.
>
> A certification under clause (i) may be by means of a computer-generated signature and statement of authenticity.

8 U.S.C. § 1229a(c)(3)(C).

The language of the regulations tracks the statutory provisions closely. *See* 8 C.F.R. § 1003.41(a), (c). The regulation provides some additional guidance, however:

> Any document or record of the types specified in paragraph (a) of this section may be submitted if it complies with the requirement of § 287.6(a) of this chapter, or a copy of any such document or record may be submitted if it is attested in writing by an immigration officer to be a true and correct copy of the original.

8 C.F.R. § 1003.41(b).[4]

---

[4] 8 C.F.R. § 287.6(a) in turn provides that "In any proceeding under this chapter, an official record or entry of therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy."

Furthermore, "Any other evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof." 8 C.F.R. § 1003.41(d).

However, § 1229a(c)(3) and its enacting regulations operate as a "safe-harbor" and establish the "maximum standard for authentication" (i.e., the conditions under which a document *must* be admitted), "but it does not establish a minimum standard." *Sinotes-Cruz*, 468 F.3d at 1196. "[F]ailure to fully comply with the terms of the statute and regulation does not render electronic conviction records inadmissible." *Padilla-Martinez*, 770 F.3d at 832. Documents "*may* be authenticated under INS regulations, or by any procedure that comports with common law rules of evidence." *Sinotes-Cruz*, 468 F.3d at 1196 (internal quotation marks and citation omitted, emphasis in original). "The guiding principle is that proper authentication requires some sort of proof that the document is what it purports to be." *Id.*

In *Sinotes-Cruz*, the Ninth Circuit held that the defendant's record of conviction was admissible, despite lacking a certification by a state official. 468 F.3d at 1196-97. The court noted that the documents bore INS stamps showing that they had been received by an INS official and "the records on their face give every indication of being official Arizona court records." *Id.* Further, the term "LEGALRECORDS" in the fax notation "strongly suggests that the records were FAXed from an Arizona legal records depository." *Id.* at 1197. The Ninth Circuit also noted that the defendant had failed to object to the IJ's decision to admit the records. *Id.*

Similarly, in *Padilla-Martinez*, the Ninth Circuit affirmed the BIA's ruling that a unofficial and uncertified facsimile copy of a transcript of a change of plea hearing was admissible. 770 F.3d at 832-33. The court noted that the transcript "appears on its face to be an official reporter's transcript" and concluded that "[e]ven absent authentication from an

immigration agent, we hold that this evidence on its face has sufficient indicia of reliability to establish admissibility." *Id.* at 833.

I turn then to the present case. At Defendant's 2011 removal hearing, the Government submitted a copy of Defendant's state court judgment of conviction for Possession of Cocaine which was unsigned and undated. Def. Mot. Ex. 6, at 11-13. The copy was certified by the ICE Assistant Chief Counsel for Tacoma, Washington to be a true and correct copy of the original in his possession. Def. Mot. Ex. 6, at 7. The copy of the conviction was faxed from the Jackson County Jail to ICE on May 9, 2011, as evidenced by the Fax Note on the upper right hand corner of the first page of the copy and by the fax receipt stamp in the upper left side of each page, indicating that the document arrived at 4:56 p.m. on May 9, 2011 from the Jackson County Sheriff.[5] Def. Mot. Ex. 6, at 11. Defendant did not object to the submission of the judgment at the removal hearing and, when questioned by the IJ, admitted that he had been convicted of Possession of Cocaine.[6]

Although the fact that the judgment was unsigned and undated does present an irregularity, the statute and regulations provide for a broad range of acceptable documents as proof of conviction, not merely formal certified copies of signed judgments. *See* 8 C.F.R. § 1003.41(d); *Gousse v. Ashcroft*, 339 F.3d 91, 94 n.1 (2d Cir. 2003) ("[F]or immigration purposes, a judgment is unnecessary, (though preferred) to establish the fact of conviction."); *Sanches-Sanchez v. Lynch*, 620 F. App'x 598, 599 (9th Cir. 2015) (the IJ properly relied on an FBI database printout and the alien's own admission to establish the existence of a conviction); *Medrano-Nunez v. Holder* 340 F. App'x 912, 914 (9th Cir. 2009) (no due process violation when

---

[5] May 9, 2011, is also the date of Defendant's guilty plea on the charge of Possession of Cocaine, which may account for the lack of signature.

[6] Defendant appears to assert that the IJ failed to adequately advise him of his right to object, but he does not substantively address this argument in his briefing. It appears to be based on Defendant's claimed inability to understand Spanish, which I have already addressed.

the alien's prior convictions were proved by his own admission, a criminal complaint, "a docket-type entry indicating the disposition and date of judgment," and an INS investigative report.).

Consistent with 8 C.F.R. § 1003.41(d), I conclude that the unsigned judgment "reasonably indicates the existence of a criminal conviction," and the fact that it was faxed from the Jackson County Jail to ICE supports the conclusion that it is what it purports to be. As in *Sinotes-Cruz* and *Padilla-Martinez*, the document has, on its face, sufficient indicia of reliability to establish admissibility. As in *Sanches-Sanchez* and *Medrano-Nunez*, the documentary evidence is bolstered by Defendant's admission at the hearing that he had been convicted of Possession of Cocaine in Oregon on May 9, 2011.[7]

Accordingly, I conclude that the IJ appropriately relied on the state court judgment of conviction in making her determination. As I have concluded that Defendant suffered no due process violation, I need not examine the issue of prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 27, is DENIED.

It is so ORDERED and DATED this 12th of January, 2017.

Ann Aiken
United States District Judge

---

[7] Conviction of a controlled substance offense will render an alien inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i)(II).